PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3825
_____

UNITED STATES OF AMERICA

v.

ROBERT WATERMAN,
                                        Appellant
_____

On Appeal from United States District Court
for the District of New Jersey
(D.C. Criminal No. 1-12-cr-00487-001)
District Judge: Honorable Robert B. Kugler
_____

Argued on April 8, 2014

Before:  FISHER and SCIRICA, Circuit Judges, and
MARIANI,* District Judge.

*The Honorable Robert D. Mariani, District Judge for the
United States District Court for the Middle District of
Pennsylvania, sitting by designation.

(Opinion Filed: June 17, 2014)

Maggie F. Moy, Assistant Federal Public Defender
ARGUED
Julie A. McGrain, Esq.
Office of Federal Public Defender
800-840 Cooper Street
Suite 350
Camden, NJ 08102
        Counsel for Appellant


Paul J. Fishman, United States Attorney
Mark E. Coyne, Chief, Appeals Division
John F. Romano, Assistant United States Attorney
ARGUED
Office of the United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102
        Counsel for Appellee

_____

OPINION OF THE COURT
_____




MARIANI, District Judge.

2

Appellant Robert Waterman was sentenced to 15 months' imprisonment after he pled guilty to the charge of destruction of records in violation of 18 U.S.C. § 1519. Waterman contends that the District Court erred in applying a three-level sentence enhancement under U.S.S.G. § 2J1.2(b)(2) for substantial interference with the administration of justice. We hold that the District Court's application of the enhancement was not clear error and, accordingly, will affirm.

## I.

Waterman was a police officer with the Pennsville, New Jersey Police Department from July 2006 until his resignation in October 2011. In August 2008, Waterman disclosed to a supervising officer that he had downloaded approximately twenty videos containing child pornography to his home computer. FBI agents were made aware of Waterman's 2008 admissions, opened an investigation, and interviewed Waterman on March 4, 2010 at his residence. Waterman told the FBI that the computer he used to view child pornography crashed in 2008 and that he threw out the "fried" hard drive in August 2008.

On March 5, 2010, Waterman's superior approached him at police headquarters and asked him to remain in the office to wait for the chief of police. Waterman did not remain in his office, but instead went outside to his patrol car. Waterman's superior found him in his vehicle, breaking apart what was determined to be a green printed circuit board.[1]

---

[1] "Hard drive" refers to the data platters contained within the sealed hard drive housing, which is attached to the green printed circuit board. Because a circuit board can be replaced and damage to the circuit board does not destroy the data in the hard drive, the Government conceded that the destruction

After searching the vehicle, officers recovered a pried-open damaged hard drive on top of Waterman's patrol bag and found a small screwdriver and hammer in the side pocket. When asked whether this hard drive contained child pornography, Waterman responded that there was a 50/50 chance that it did because he had two hard drives, one that he threw out and one that he kept. Later that day, FBI agents again interviewed Waterman at his home, whereupon he explained that he had found the hard drive in his garage after his initial interview with the FBI. Two experts later examined the hard drive in an effort to recover the data, but the damage was beyond repair. The experts concluded that the hard drive had been pried open and the hard drive platters had been scratched. They concluded that the damage was consistent with damage caused by a foreign instrument such as a screwdriver.

On January 8, 2013, Waterman pled guilty to a one-count indictment charging him with destruction, alteration or falsification of records in a federal investigation in violation of 18 U.S.C. § 1519. At sentencing, the District Court found that there was sufficient evidence that Waterman destroyed the hard drive on March 5, 2010, after he learned of the FBI investigation. The District Court concluded that destruction of the hard drive resulted in the early termination of the FBI investigation and the unnecessary expenditure of substantial governmental resources. Accordingly, the District Court adopted the Presentence Investigation Report and applied a three-level enhancement under U.S.S.G. § 2J1.2(b)(2) for substantial interference with the administration of justice. The

---

of the circuit board, while sufficient for a conviction under 18 U.S.C. § 1519, was insufficient for an enhancement under § 2J1.2(b)(2). App. 54.

enhancement resulted in an adjusted offense level of 16 and a criminal history category of I, which corresponded to 21 to 27 months' imprisonment. Without the § 2J1.2(b)(2) enhancement, Waterman's adjusted offense level would have been 13, with an advisory Guidelines range of 12 to 18 months' imprisonment.

At the sentencing hearing, the District Court conducted a thorough examination of the 18 U.S.C. § 3553(a) factors. It considered letters from Waterman's friends, family and coworkers attesting to his moral character. The District Court noted Waterman's exemplary military service, personal work ethic, and dedication to his children. It also considered the serious nature of the crime and the general need to deter others from future similar conduct. After considering these factors, the District Court found that a sentence within the Guidelines range would not be appropriate given the "extraordinary personal characteristics of this defendant." App. 100. Accordingly, the District Court granted a six-month downward variance and sentenced Waterman to 15 months' incarceration. Waterman timely appealed.[2]

## II.

Waterman contests the District Court's application of an enhancement for substantial interference, contending that there was insufficient evidence for the District Court to find that he destroyed the hard drive on March 5, 2010. Waterman argues that the District Court clearly erred because the Government failed to sufficiently prove the applicability of the § 2J1.2(b)(2) enhancement. Because we hold that the

---

[2] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

5

District Court's factual findings were not clearly erroneous, we will affirm.

"We review the District Court's factual findings relevant to the Guidelines for clear error and exercise plenary review over the District Court's interpretation of the Guidelines." United States v. West, 643 F.3d 102, 105 (3d Cir. 2011) (citations omitted). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal quotation marks and alterations omitted) (quoting Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal., 508 U.S. 602, 622 (1993)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).

Under U.S.S.G. § 2J1.2(b)(2), "[i]f the offense resulted in substantial interference with the administration of justice, increase by 3 levels." Application Note 1 of U.S.S.G. § 2J1.2 states that "'[s]ubstantial interference with the administration of justice' includes a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." A district court applies the preponderance of the evidence standard in making factual findings regarding disputed Guidelines points. Grier, 475 F.3d at 568.

At the sentencing hearing, the District Court applied the substantial interference enhancement and did not "have any difficulty determining that Mr. Waterman destroyed the platters" on March 5, 2010, after learning of the FBI

investigation. App. 76. The District Court noted that, in his statement to the probation officer, Waterman said that he brought the hard drive to work with the intention of giving it to his supervisor. Though Waterman had occasion to turn in the hard drive on March 5, he instead left the building and was observed destroying the circuit board in his patrol car. The District Court also noted that the circumstantial evidence was strong because Waterman had the broken hard drive and a screwdriver—a tool unnecessary for his job—in his patrol bag, and the damage to the hard drive was consistent with damage caused by a screwdriver. Based on this evidence, the District Court concluded that there was a preponderance of evidence that Waterman destroyed the hard drive on March 5, 2010, and, accordingly, overruled Waterman's objection to the enhancement.

The District Court did not clearly err in finding that Waterman destroyed the hard drive on March 5, 2010. Though Waterman argues that no one witnessed him actually destroying the hard drive in his squad car, such direct evidence is unnecessary. The record shows that Waterman was seen destroying the circuit board in his car on March 5, 2010; the officers found the damaged hard drive in Waterman's squad car along with a screwdriver and hammer; the damage caused to the hard drive was consistent with damage done with a screwdriver; and Waterman himself stated that there was a 50/50 chance that the hard drive contained child pornography. Based on the record before us, we cannot say we are left with a "definite and firm conviction that a mistake has been committed." Grier, 475 F.3d at 570. Accordingly, we hold that the District Court did not clearly err.

The Government also argues that, even if the District Court clearly erred in its application of the enhancement, any

7

error was harmless. Waterman argues otherwise, contending that the District Court did not explicitly state that the 15-month sentence was the only appropriate sentence. Waterman also contends that the erroneously calculated offense level was a critical reference point for the District Court's downward variance. Our Court has previously noted that, "where . . . the district court does not explicitly state that the enhancement had no effect on the sentence imposed, it usually will be difficult to ascertain that the error was harmless." United States v. Zabielski, 711 F.3d 381, 389 (3d Cir. 2013). Because we believe the District Court did not clearly err in finding that Waterman destroyed the hard drive on March 5, 2010, we need not determine whether the alleged error was harmless.

Finally, in their briefs and at oral argument, Waterman and the Government also addressed the issue of whether timing is a relevant consideration for district courts applying the § 2J1.2(b)(2) enhancement. The Government contends that timing is irrelevant to the application of the enhancement, noting that courts have applied the enhancement to obstructive conduct that occurred well before the initiation of a potential judicial proceeding or investigation. See United States v. Amer, 110 F.3d 873, 885 (2d Cir. 1997) (holding that the substantial interference enhancement properly applied to a defendant convicted of abducting his children and removing them from the United States, notwithstanding the absence of an ongoing proceeding at the time of the abduction). We are unconvinced by the Government's assertion. The language of the sentencing enhancement—mandating that the "offense resulted in substantial interference with the administration of justice," U.S.S.G. § 2J1.2(b)(2) (emphasis added)—imposes a requirement of causality. See Burrage v. United States, 134 S. Ct. 881, 887-

88 (2014) ("A thing 'results' when it '[a]rise[s] as an effect, issue, or outcome from some action, process or design.' 2 The New Shorter Oxford English Dictionary 2570 (1993). 'Results from' imposes, in other words, a requirement of actual causality."). In determining whether the offense caused substantial interference, the timing of the offense in relation to the events which give rise to an assertion of substantial interference[3] is a relevant factor for district courts to consider when applying the enhancement. Nonetheless, because our holding does not rest on the issue of timing, we need not make a determination as to its relevance in this case.

## III.

We conclude that the District Court did not clearly err in applying the § 2J1.2(b)(2) enhancement for substantial interference with the administration of justice based on its determination that Waterman destroyed the hard drive on March 5, 2010. Accordingly, we will affirm the judgment of the District Court.

---

[3] U.S.S.G. § 2J1.2 app. n.1 (defining "substantial interference with the administration of justice" as including "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources").