**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3126
_____

UNITED STATES OF AMERICA

v.

ROBERT SCOTT, SR., a/k/a Big Rob

Robert Scott, Sr.,
Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civ. No.:  1-05-cr-443-011
District Judge:  Honorable Yvette Kane
_____

Argued:
June 21, 2016
_____

Before: FISHER, GREENAWAY, JR., and ROTH, *Circuit Judges*.

(Opinion Filed: November 7, 2016)


Jennifer P. Wilson, Esquire *(Argued)*
227 High Street
P.O. Box 116
Duncannon, PA  17020
        *Counsel for Appellant*

Stephen R. Cerutti, II, Esquire *(Argued)*
Gordon A.D. Zubrod, Esquire
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA  17108
            *Counsel for Appellee*

_____

OPINION[*]

_____

GREENAWAY, JR., *Circuit Judge*:

Petitioner Robert Scott, Sr., brought this habeas petition under 28 U.S.C. § 2255 seeking to vacate his conviction and sentence; the District Court denied his petition but certified two issues for appeal.  The first is whether the trial court erred in not allowing Scott to withdraw his guilty plea "for any reason or no reason," as prescribed by the Federal Rules of Criminal Procedure.  The second is whether Scott's trial counsel was ineffective for failing to move to withdraw Scott's guilty plea sooner.  Because we believe that neither of these issues present a constitutional violation, we will affirm the District Court.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

## I. Background

Scott was indicted on charges relating to trafficking individuals with intent to engage in prostitution, coercing and enticing individuals to travel in interstate commerce for prostitution, interstate travel with intent to distribute proceeds of prostitution, and interstate transportation of a minor with intent to engage in prostitution, in violation of 18 U.S.C. §§ 371, 2421, 2422(a), 1952(a), and 2423(a).

On September 28, 2007, Scott entered into a guilty plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) and pleaded guilty to three counts contained in his indictment. In an 11(c)(1)(C) plea, the government agrees that a certain sentencing range applies, and that sentencing range binds the court once it accepts the guilty plea. Fed. R. Crim. P. 11(c)(1)(C),[1] (c)(3).[2] Under Rule 11, Scott was allowed to withdraw the plea according to the following framework:

---

[1] Fed. R. Crim. P. 11(c)(1)(C) states:
> (1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
>
> ….
>
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

> (1) before the court accepts the plea, for any reason or no reason; or
> (2) after the court accepts the plea, but before it imposes sentence if:
>> (A) the court rejects a plea agreement under Rule 11(c)(5); or
>> (B) the defendant can show a fair and just reason for requesting the withdrawal.

Fed. R. Crim. P. 11(d).

The terms of Scott's Rule 11(c)(1)(C) agreement provided that Scott would receive no more than 25 years' imprisonment plus any fines, restitution, special assessment, or period of supervised release imposed by the trial court. At the plea agreement hearing held on September 28, 2007, the trial court indicated that it would "defer acceptance of the guilty plea pending the [presentence report]." App. 161.

On August 15, 2008, the trial court accepted the 11(c)(1)(C) agreement during an in-chambers conference. The transcript depicts the relevant exchange as follows: First, the trial court stated: "As I've indicated to the lawyers earlier, I am accepting the binding plea agreement." App. 171. Then, Scott's attorney told the court: "[Scott] has requested counsel to make a motion to withdraw his plea of guilty and to proceed to trial." App.

---

[2] Fed. R. Crim. P. 11(c)(3) states:

> Judicial Consideration of a Plea Agreement.
> (A) To the extent the plea agreement is of the type specified in Rule 11(c)(1)(A) or (C), the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.

170. In response, the trial court stated that it was "accepting the guilty plea and rejecting the defendant's request to withdraw his plea." App. 172. Scott subsequently filed a written motion to withdraw his plea on September 2, 2008, which the trial court denied.

The trial court sentenced Scott to a 274–month term of imprisonment, three years of supervised release, a $3,000 fine, and a special assessment of $300.

Scott appealed his sentence, and this Court affirmed. With regard to the plea-withdrawal issue, we stated:

> [T]he record establishes that the [trial court] accepted Scott's guilty plea before any mention that Scott may file a motion to withdraw the plea. Moreover, Scott did not file the motion until two weeks later. Accordingly, it was Scott's burden to assert a "fair and just reason" for the withdrawal. Fed. R. Crim. P. 11(d)(2)(B). Essentially, Scott's motion expressed second thoughts on whether he could receive a fair trial. The [trial court] was within its discretion to regard this as an insufficient reason to grant his motion.

*United States v. Scott*, 434 F. App'x 103, 106 (3d Cir. 2011).

In 2012, Scott moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. At an evidentiary hearing, Scott's trial counsel, Donald Martino, provided testimony crucial to the issue on appeal: Martino stated that, before the in-chambers conference in which the trial court accepted the plea, he had orally moved to withdraw the plea during an off-the-record in-chambers conference. The relevant portion of Martino's testimony is as follows:

Q: As you arrived at the courthouse on the morning of August 15, 2008, was your understanding that at that moment in time if Mr. Scott wanted to withdraw his plea, he could do so for any reason at all?

A: Absolutely.

Q: Without providing a fair and just reason?

A: Correct.

Q: And so when you met with him that morning and he told you he wanted to withdraw his plea, did you counsel him that he was able to do that?

**A: I actually told him that I would do it, and I did do it.**

Q: And so then you proceeded directly from your meeting with him to chambers. Is that right?

A: I think, yeah, we started in chambers, I'm sure. And I do remember that, but it's also in the transcript. When we started, the transcript references the chambers discussion.

**Q: And in the chambers discussion, is that when you advised [AUSA] Zubrod and Judge Kane that your client wished to withdraw his plea?**

**A: Yes.**

**Q: And did you make essentially an oral motion to that effect?**

**A: It wasn't on the record, but I requested it, sure.**

Q: Okay. And was there any kind of a ruling made prior to going on the record?

A: As I said when I testified for Mr. Zubrod**, I believe that I was then requested by the court to conference with my client again in the marshal's office, and I did. I met with him again, and I think the idea at that point was to confirm that that's really what he wanted.**

**I don't remember this specifically, but we may have had a discussion in chambers about Mr. Scott going back and forth on this.** And I know Mr. Zubrod was aware of it because it's in an email. But I do remember going to speak with Mr. Scott again to confirm that, coming back up, and then I don't think we met in chambers again. **I think then we did the on-the-record discussion.**

App. 122–123 (emphases added).

6

In a colloquy between Martino and the Court, Martino also stated that he made the oral motion to withdraw the plea before it was accepted by the Court:

> **Q. She accepted the plea or the plea agreement?**
> A. The plea agreement, the plea agreement.
> Q. So she was accepting the plea agreement?
> **A. Correct, at that point she did.** And I informed the court that I still needed to file a motion to withdraw. Her Honor asked me to do that in writing, which is normal, and to file a brief with that. And I don't remember exactly when I did that. I looked on the docket, though, and I know I did do that then.
> Q. Okay.
> THE COURT: When you say I still needed to file a motion to withdraw, you didn't mean withdraw from representation, you meant withdraw the guilty plea?
> [MARTINO]: That was later. It was withdrawal of the guilty plea. Your Honor asked me — I believe you asked me to do that in writing, which would be normal.
> THE COURT: Okay.
> [MARTINO]: **I had already made the oral motion.**

App. 97 (emphases added).

Thus, on habeas review, the material point of disagreement is whether Scott's withdrawal of his plea on August 15, 2008 occurred before or after the trial court accepted it. According to Scott, Martino's testimony demonstrates that he formally withdrew the plea during the off-the-record conference—that is, before the trial court accepted it and while he was permitted to withdraw the plea for any reason. For its part, the government argues that Martino informed the trial court that Scott intended to withdraw his plea after the trial court accepted it. Martino's testimony, the government

7

believes, neither clarifies the order of events nor conclusively determines whether Scott's withdrawal was submitted before the trial court accepted it.

The District Court[3] denied Scott's §2255 petition and all claims therein. As for the claims relevant to this appeal, the District Court concluded that Scott's trial counsel did not render ineffective assistance because Scott never decisively communicated a desire to withdraw his plea. It also concluded that Scott was estopped from bringing his plea-withdrawal claim because Scott "already raised on direct appeal the issue of the Court's refusal to allow him to withdraw his plea of guilty, which the Third Circuit rejected." App. 14. Finally, the District Court decided to credit the testimony of Martino over Scott in resolving their differing versions of events.

Nonetheless, the Court certified two issues for appeal.[4] The first is whether the trial court erred in not allowing Scott to withdraw his plea. The second is whether Scott's trial counsel "was ineffective for failing to move sooner to withdraw his guilty plea." App. 15.

---

[3] The same district judge who sentenced Scott also decided his § 2255 petition. For ease of reference, we use "trial court" to refer to the Court's sentencing of Scott and use "District Court" to refer to the Court's review of his § 2255 petition.

[4] Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Since the District Court decided that the issuance of a COA was proper, we do not reconsider whether Scott has made a substantial showing of the denial of a constitutional right. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 649–50 (2012) (abrogating *United States v. Cerepo*, 224 F.3d 256 (3d Cir. 2001) (en banc) and holding that § 2253(c)(2) & (3) are non-jurisdictional rules).

On appeal, Scott sets forth the following arguments:

First, he argues that the trial court erred in not allowing him to withdraw his plea. This argument relies on Scott's belief that he withdrew the plea *before* it was formally accepted by the trial court. Because Scott believes he withdrew the plea before it was accepted, he argues that, under Federal Rule of Criminal Procedure 11, he should have been allowed to withdraw it "for any reason or no reason." Brief of Appellant at 10, *Scott*, 434 F. App'x 103 (No. 09-2576).[5] Scott also believes that he is not estopped from bringing this claim because Martino's testimony constitutes new evidence, obtained after direct appeal, which resolves the factual issue of when he moved to withdraw the plea.

Second, Scott argues that trial counsel Martino was ineffective for failing to withdraw the plea sooner. According to Scott, he informed Martino of his desire to withdraw the plea as early as March 2008, and Martino's failure to withdraw the plea immediately or soon after this communication constitutes constitutional error.

## II. Jurisdiction and Standard of Review

---

[5] Scott also asks us to determine whether a district court must explicitly and unambiguously accept a guilty plea in order for it to have legal effect. Brief of Appellant at 13–21, *Scott*, 434 F. App'x 103 (No. 09-2576). He believes that the record is ambiguous as to whether the trial court accepted the plea on September 28, 2007 or August 15, 2008. However, on appeal, the government agrees with Scott that the trial court accepted the plea on August 15, 2008 (although they disagree on precisely when it was accepted on August 15, 2008). Further, both parties agree on appeal that on September 28, 2007, the trial court only deferred acceptance of—i.e., did not then accept—the guilty plea. Thus, we need not address this issue.

The District Court had jurisdiction under 28 U.S.C. § 2255. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. "In a federal habeas corpus proceeding, we exercise plenary review of the district court's legal conclusions and apply a clearly erroneous standard to the court's factual findings." *United States v. Bui*, 795 F.3d 363, 366 (3d Cir. 2015).

## III. Analysis

### A. Plea-Withdrawal Issue

Because Scott's claim that the trial court erred in refusing to allow him to withdraw his plea was presented and addressed on direct appeal, we must first determine whether we will reconsider the issue.

Generally, a § 2255 proceeding may not be used to relitigate questions that were raised and considered on direct appeal. *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981). We have held, however, that relitigation may be allowed for "newly discovered evidence that could not reasonably have been presented at the original trial, a change in applicable law, incompetent prior representation by counsel, or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims." *United States v. Palumbo*, 608 F.2d 529, 533 (3d Cir. 1979) (footnotes omitted); *see also Thomas v. United States*, 572 F.3d 1300, 1303–04 (11th Cir. 2009) ("[A]n appellate decision is binding in all subsequent proceedings in the same case unless the presentation of new evidence or an intervening

10

change in the controlling law dictates a different result, or the appellate decision is clearly erroneous and, if implemented, would work a manifest injustice." (internal quotation marks and citation omitted)).

On direct appeal, Scott argued that the trial court abused its discretion because it accepted the plea after Scott requested to withdraw it. Brief of Appellant at 15–17, *Scott*, 434 F. App'x 103 (No. 09-2576). In support of this assertion, Scott cited transcript excerpts of the August 15, 2008 on-the-record conference. *Id.* at 15. The statements made at this conference, however, did not support his asserted timeline of events—rather, they depict the trial court as accepting the plea before Scott's counsel makes any comments regarding withdrawal. Given this record, we concluded that there was no basis to conclude that the trial court erred in accepting the plea. *Scott*, 434 F. App'x at 104.

Now, Scott argues that relitigation is appropriate because he presents new evidence discovered after his direct appeal—namely, Martino's testimony regarding the off-the-record conference in which Martino made an oral motion to withdraw the plea. Scott argues that this new evidence provides the factual predicate for his plea-withdrawal claim that was not available to him previously.

Based on Martino's testimony, we agree that Martino orally moved to withdraw the plea before it was accepted by the trial court.[6] According to Martino's testimony, Martino moved to withdraw the plea during an off-the-record conference, the trial court instructed him to file a motion in writing, and then, during the on-the-record conference, the trial court accepted the plea.[7]

Further, Martino's testimony contradicts the statements made by this Court on direct appeal. There, we stated: "the record establishes that the [trial court] accepted Scott's guilty plea *before any mention* that Scott may file a motion to withdraw the plea." *Scott*, 434 F. App'x at 106 (emphasis added). Martino's testimony indicates that the trial court did in fact have some knowledge that Scott might file a motion to withdraw the

---

[6] Our decision to adopt the facts as presented in Martino's testimony owes in part to the deference we give to the District Court's determination that his testimony was credible. *See United States v. Givan*, 320 F.3d 452, 464 (3d Cir. 2003) ("[A]ssessments of credibility by the trial court are entitled to great deference at the appellate level." (quoting *United States v. Brothers*, 75 F.3d 845, 853 (3d Cir. 1996))).

The District Court did not make an explicit factual finding as to the sequence of events on August 15, 2008. It did, however, describe the timeline as "opaque," and made the following observations: "Martino informed the Court off-the-record that he wanted to withdraw his plea, which the Court requested [be submitted] in writing . . . thereafter, at a conference concerning the guilty plea held later that day, the Court indicated that it was accepting the binding plea agreement." App. 11 n.1. Based on these observations, it appears that the District Court found, as we do here, that Martino made a request to withdraw the plea before it was accepted by the trial court.

[7] We are puzzled as to why a matter squarely focused on the acceptance of Scott's plea agreement was handled off-the-record at all. Given the importance of clarity regarding how, when, and whether a plea agreement is accepted by parties and the court,

plea. In other words, his testimony directly refutes our statement that the trial court accepted the plea before any indication that Scott might withdraw it.

Thus, evidence of the off-the-record conference is new, material to Scott's instant claim, and directly relevant to our disposition of his claims on direct appeal. But that the evidence has these characteristics, is not to say that relitigation is appropriate. We must also conclude that the evidence "could not reasonably have been presented at the original trial," *Palumbo*, 608 F.2d at 533—or for our purposes, on direct appeal.

We conclude that Scott cannot show that he could not reasonably have presented this evidence on direct appeal. First, there is evidence that Scott had personal knowledge of the off-the-record conference and Martino's oral motion to withdraw the plea even though he was not present. On direct appeal (where he was represented by different counsel), Scott stated that "the plea was accepted in chambers without the presence of the Defendant and after Defendant's counsel had orally moved to withdraw the plea." Brief of Appellant at 17, *Scott*, 434 F. App'x 103 (No. 09-2576). That Scott made this assertion suggests that he had some knowledge that the oral motion to withdraw the plea was made.

Further, given that the record strongly suggests that Scott had knowledge of this purportedly new evidence, his failure to even attempt to present it on direct appeal contradicts any indication of diligence. While it is true that, as a general matter, courts

we believe that courts should make every effort to follow streamlined and transparent

13

are limited to the trial court record on appeal,[8] there is no evidence that Scott made any attempt to obtain a statement from Martino and move to supplement the record. Due diligence does not require that the court accept a defendant's new evidence; it simply requires that the defendant make some meaningful steps toward obtaining the evidence and presenting it to the reviewing court. Based on the record before us, it appears Scott

---

processes.

[8] It is likely that none of the exceptions to this nearly categorical rule would have applied to Scott. Federal Rule of Appellate Procedure 10(e)(2) provides that court of appeals can supplement the record in order to correct an omission or misstatement. Fed. R. App. P. 10(e)(2)("If anything material to either party is omitted from or misstated in the record by error or accident, the omission or misstatement may be corrected and a supplemental record may be certified and forwarded . . . (C) by the court of appeals.").

We have clarified that Fed. R. App. P. 10(e)(2) "allows amendment of the record on appeal *only* to correct inadvertent omissions, not to introduce new evidence." *See In re Application of Adan*, 437 F.3d 381, 388 n.3 (3d Cir. 2006) (emphasis added); *see also id.* ("[W]e will not consider new evidence on appeal absent extraordinary circumstances, such as those that render the case moot, or alter the appropriateness of injunctive relief, a change in pertinent law, or facts of which a court may take judicial notice."). Thus this rule, by its terms and according to this Court's interpretation, would not be helpful to Scott: information as to the content of the off-the-record conference would not reflect an omission or mistake in the record, nor would it satisfy any of the exceptions expressly articulated in *Adan*.

Finally, under Federal Rule of Evidence 201, "the court may judicially notice a fact that is not subject to reasonable dispute." Fed. R. Evid. 201(b). The evidence Scott presents does not meet this criterion. The fact of when Martino made the oral motion is, as evidenced by the dispute that has arisen on this appeal, subject to reasonable dispute and thus is not the type of fact for which judicial notice is appropriate. Thus, this limited rule also would not have allowed Scott to present the new evidence of Martino's testimony.

14

took no such steps and thus we cannot conclude that the new evidence could not have been reasonably presented on direct appeal.

Thus, because Scott presents no facts from which we can infer diligence, we conclude that Scott cannot lift the relitigation bar. We turn next to the issue of whether Scott received ineffective assistance of counsel.

## B. Ineffective Assistance of Counsel

Scott argues that trial counsel Martino was ineffective in failing to withdraw his plea prior to August 15, 2008, even though Scott told him before that date that he wished to withdraw the plea. In other words, Scott claims that but for Martino's errors, he would have withdrawn the plea. Whether Scott's indecision was the reason for Martino's failure to withdraw the plea sooner is a factual question reviewed for clear error. Whether Martino's failure to withdraw the plea sooner constitutes ineffective assistance of counsel is a legal question which we review *de novo*.

We conclude that the District Court did not err in concluding that Martino's failure to withdraw the plea was not due to any error or omission on Martino's part, but rather due to Scott's indecision prior to August 15, 2008. As such, we also conclude that Scott cannot show that he received ineffective assistance of counsel.

## 1. Martino and Scott's Accounts at the Evidentiary Hearing

15

During the evidentiary hearing, Scott and Martino recalled different versions of the events surrounding the acceptance of the guilty plea. We summarize their perspectives below.

Scott maintained that he wanted to withdraw the plea after he received the pre-sentence report and realized that he disagreed with certain sentencing enhancements. Scott indicated that upon this realization, he communicated with Martino on several occasions to inform him that he wanted to withdraw the plea, starting with two letters in March 2008. Scott stated that he sent another letter expressing the same desire in July 2008. Scott stated that later in July 2008, he met with Martino and AUSA Gordon A. Zubrod to discuss the enhancements being applied to his sentence. When asked whether he expressed his desire to withdraw his plea at this meeting, Scott replied "Yes ma'am. I made it well aware that I was going withdraw my plea and would rather go to trial and beat the enhancements." App. 72.

Conversely, the upshot of Martino's testimony was that Scott was indecisive about whether to withdraw his plea until August 15, 2008. Martino admitted that Scott wrote him at least one letter informing him of his desire to withdraw the plea. Martino stated that in March 2008, he "wasn't very familiar with the withdrawal process of 11(c)(1)(C)" and that he was "not sure what the implications [were]." App. 94. However, Martino stated he later "became more familiar with the process[,]" and thereafter told Scott "repeatedly that [he] did not think it was advisable for him [to withdraw]." App. 94.

16

Martino stated that because of his advice, Scott decided not to withdraw. Martino stated that he and Scott had several conversations in which Scott would express a desire to withdraw his plea, Martino would advise against it, and Scott would change his mind. According to Martino, it was not until August 15, 2008, that Scott "was adamant that he did want to withdraw his plea." App. 95.

Thus, Martino and Scott's central dispute relates to the existence of Scott's indecision—Scott maintains that he always wanted to withdraw the plea, while Martino states that Scott waffled until August 15, 2008. The parties do not dispute that at some point prior to August 15, 2008 Scott informed Martino that he wanted to withdraw the plea.[9] However, according to Martino, Scott's desire to withdraw the plea remained tentative until he became adamant on August 15, 2008.

## 2. The District Court's Findings of Fact

In resolving this factual dispute, the District Court "credit[ed] the testimony of Mr. Martino and f[ound] that failure to move to withdraw the plea prior to August 15, 2008 was the result of Petitioner's personal decision making rather than any ineffective assistance provided by Mr. Martino." App. 14.

The District Court's finding—that Scott's indecision was the reason Martino did not withdraw the plea prior to August 15, 2008—was not clearly erroneous. "A finding

17

is clearly erroneous when, although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (internal quotation marks and alterations omitted) (quoting *Concrete Pipe & Prods. of Cal.*, *Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993)). Importantly, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574 (1985)).

Thus, notwithstanding other reasonable readings of the record,[10] we cannot conclude that the District Court clearly erred because we do not have the "definite and

---

[9] Specifically, in a letter from Martino to Scott from March 2008, Martino states "I have received letters from you in the past week regarding withdrawing your guilty plea." App. 189. Further, a letter from July 2008, which is in the record, demonstrates that Scott had thoughts about withdrawing his plea.

[10] Another reasonable reading of the record is that Martino did not withdraw the plea because he was unfamiliar with the law. In a letter dated March 18, 2008, Martino told Scott: 1) "in Federal Court you are almost never permitted to [withdraw a guilty plea]"; 2) that he could be charged with perjury if he withdrew his plea, and 3) that the issue of withdrawing his plea was "premature" because "[the District Court] had not accepted [the] plea agreement." App. 166. This is in direct contradiction with Fed. R. Civ. P. Rule 11(d), which would have allowed Scott to withdraw the plea for any reason. In a second letter dated March 26, 2008, Martino stated: "[a]s I said before, [withdrawing your plea] does not seem advisable for multiple reasons." App. 167. While Martino testified that he eventually became more "familiar with the process," App. 94, and at that point gave Scott correct advice, it is curious that even at the August 15, 2008 conference, he did not object to the trial court's acceptance of the plea after he had orally moved to withdraw it.

firm" conviction that a mistake has been committed. *Grier*, 475 F.3d at 570. As noted above, we defer to the District Court's decision to credit Martino's testimony. In that testimony, Martino maintained that he moved to withdraw the plea as soon as Scott became "adamant" about wanting to do so, and that his only reason for not doing so sooner was because Scott was never certain about which route he wished to take. Moreover, there is no record evidence supporting Scott's assertion that he was always certain about wanting to withdraw the plea.

While it is true that the record contains a letter from July 2008 in which Scott makes statements about possibly withdrawing the plea, the statements in that letter do not amount to a clear request from Scott to Martino to withdraw the plea. Further, Scott produces no other evidence, documentary or otherwise, demonstrating what he describes as his firm decision to withdraw the plea.

Thus, we conclude that the District Court did not clearly err in finding that Martino failed to withdraw sooner because of Scott's indecision. We now turn to whether Martino's performance constitutes ineffective assistance of counsel under relevant standards.

### 3. Ineffective Assistance of Counsel

---

Notwithstanding the above, we do not find a clear error because we are not convinced that the District Court's finding was a mistake, simply that there are other plausible ways to view the evidence.

Under *Strickland v. Washington*, a petitioner demonstrates ineffective assistance of counsel based on the following: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984). To demonstrate deficiency of performance under the *Strickland* standard, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms taking into account all of the circumstances. *Id*. at 688.

The standard on prejudice is whether there is a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694; *see also Jermyn v. Horn*, 266 F.3d 257, 282 (3d Cir. 2001) (stating that the standard is not "a stringent one," and is "less demanding than the preponderance standard" (quoting *Baker v. Barbo*, 177 F.3d 149, 154 (3d Cir. 1999)). To establish prejudice in the context of guilty pleas, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985), and that a decision to go trial "would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010).

Given that we adopt the District Court's finding that Scott did not withdraw the plea prior to August 15, 2008 because of his indecision and not because of any error committed by Martino, we cannot conclude that Martino's performance constituted

20

deficient performance. It did not fall below an objective standard of reasonableness for Martino to not withdraw the plea sooner if his client had not communicated clear desire to do so.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court.