[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-12842
Non-Argument Calendar
_____

D.C. Docket No. 9:19-cr-80025-DMM-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CORNELIO JEREMIAS JUAREZ SAMAYOA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 15, 2020)

Before WILSON, BRANCH, and ED CARNES, Circuit Judges.

PER CURIAM:

Cornelio Jeremias Juarez Samayoa pleaded guilty to destruction of records in a federal investigation in violation of 18 U.S.C. § 1519. At sentencing, the district court applied two enhancements: § 2J1.2(b)(2) for engaging in conduct that resulted in "substantial interference with the administration of justice," and § 2J1.2(b)(3)(B) for selecting an "essential or especially probative" record to destroy. Juarez appeals the application of those two enhancements.

I.

In September 2018 the Department of Homeland Security was investigating a group that was conspiring to make and sell falsified identification documents. In the course of that investigation, an undercover officer texted Juarez and tried to buy falsified documents for two people. Juarez at first texted back but eventually became suspicious and stopped texting the undercover officer. Ten days later Carlos Ruiz, a Homeland Security investigator, stopped Juarez and a passenger while they were driving to work. He had Juarez get out of his car, told him that he knew about the scheme, and asked to see the phone that Juarez used to order falsified documents.[1] Juarez said that the phone was at his home and agreed to take Ruiz to get it. Juarez returned to his car to tell his passenger that he would be right back.

---

[1] Juarez and Ruiz spoke in Spanish during the stop.

2

But the phone was not at Juarez's home, it was in the car.  And Juarez was able to delete multiple text messages from the phone before Ruiz noticed and stopped him.  Ruiz then read Juarez his Miranda rights and conducted an interview, which he recorded.  During that interview, Juarez admitted to Ruiz that he conspired with a man named Ovidio who made the falsified documents, and he gave the officer permission to search his phone for text messages from Ovidio.  The officer saw that the text chain had been deleted and said (as translated to English): "Oh, you deleted it now."  Juarez replied, "Yes, yes."  He consented to a forensic search of his phone, and although officers found pictures of falsified identification documents and headshots for future documents, they could not recover the deleted text messages between Juarez and Ovidio.

Juarez was charged with conspiracy to transfer falsified identification documents and with destruction of records in a federal investigation.  He pleaded guilty to destruction of records and the government dropped the conspiracy charge.

The Presentence Investigation Report assigned Juarez a base offense level of 14.  It recommended a 3-point enhancement under § 2J1.2(b)(2) for substantially interfering with the administration of justice and a 2-point enhancement under § 2J1.2(b)(3)(B) for selecting an essential or especially probative record to destroy.  It also recommended a 3-point reduction under § 3E1.1 for acceptance of responsibility, bringing the total offense level to 16.  Based on his criminal history

3

category of I, the PSR calculated his guidelines range as 21 to 27 months imprisonment.

Juarez objected to the PSR recommendations, arguing that neither enhancement should apply. At his sentence hearing, he argued that he had deleted only one text message after he had been pulled over, a message from a family member who wanted to buy falsified documents. He argued that it was his regular practice to delete text messages and, because of that practice, he had already deleted the text chain with Ovidio before he was pulled over. He also noted that he had cooperated with the officers, answered their questions about Ovidio, and offered to try texting him again.

The government argued that the enhancements were appropriate. It contended that Officer Ruiz had seen Juarez delete more than one text message. And it contended that had Ruiz been able to obtain the text messages between Ovidio and Juarez, he would have used them to investigate Ovidio.

The district court overruled Juarez's objections, calculated his guidelines range as 21 to 27 months in prison, and sentenced him to 24 months in prison. Juarez appeals, contending that the court improperly applied the enhancements.

II.

When reviewing sentencing guidelines decisions, we review de novo legal questions. United States v. Rothenberg, 610 F.3d 621, 624 (11th Cir. 2010). We

4

review factual findings made by the district court at sentencing only for clear error. Id. And we apply due deference, which is akin to clear error review, when reviewing the district court's application of the guidelines to the facts. Id. A district court's factual finding is clearly erroneous if it leaves us "with a definite and firm conviction that a mistake has been committed." Id. The government bears the burden of proving all facts necessary to support a sentencing enhancement by a preponderance of the evidence. United States v. Dimitrovski, 782 F.3d 622, 628 (11th Cir. 2015).

### III.

Juarez first contends that the district court erred by finding that he substantially interfered with the administration of justice resulting in a 3-level increase.

Juarez argues that the enhancement should not apply for two reasons. First, he argues that he had deleted the text messages from Ovidio as part of his regular practice of deleting text messages, that he had done so before he was pulled over, and it was clear error for the district court to find otherwise. Second, he argues that, even if he did delete the text messages after being pulled over, that did not amount to substantial interference under § 2J1.2(b)(2).

5

A.

Juarez's first argument, that the district court clearly erred by finding that Juarez deleted his text messages with Ovidio during the traffic stop, is unpersuasive. The district court's finding is supported by the record. Ruiz filmed his interrogation of Juarez during the traffic stop, and during that interrogation Juarez admitted that he had just deleted the text messages with Ovidio. Ruiz said: "Oh, you deleted it now," referring to the text chain with Ovidio. Juarez replied, "Yes, yes."

That is enough to support the district court's findings. Juarez was asked if he deleted the text messages "now," and he answered "yes." "Now" means now, not earlier. See Carcieri v. Salazar, 555 U.S. 379, 388 (2009) (defining now as "at the present time") (quoting Webster's New International Dictionary 1671 (2d ed. 1934)). And "yes" means yes. Based on that admission, the district court did not clearly err in finding that Juarez deleted the text messages during the stop and not before it.

B.

Juarez also argues that even if he deleted Ovidio's text messages after he was pulled over, that did not amount to substantial interference. Under § 2J1.2(b)(2), courts apply a 3-level increase if "the offense resulted in substantial interference with the administration of justice." The commentary to that guideline

includes a non-exhaustive list of ways to prove that the defendant substantially interfered with the administration of justice, including: "[1] a premature or improper termination of a felony investigation; [2] an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or [3] the unnecessary expenditure of substantial governmental or court resources." § 2J1.2 cmt. n.1.  The government stated at sentencing that it was relying on the first example of substantial interference — "premature or improper termination of a felony investigation" — not on the other examples of substantial interference.

Juarez contends that the government cannot prove that his deletion of his text messages with Ovidio "resulted in" the "premature or improper termination of a felony investigation." § 2J1.2(b)(2); cmt. n.1.  The phrase "resulted in" imposes a causation requirement.  United States v. Waterman, 755 F.3d 171, 175 (3d Cir. 2014).  That means, according to Juarez, that to support application of the enhancement, the government must show that Juarez's deletion of the text messages caused the investigation into Ovidio to end prematurely or improperly.

Assuming that Juarez's definition is correct, the district court did not err in applying the substantial interference enhancement.  It did not because the commentary to this guideline is clear: the list provided is a non-exhaustive one.  § 2J1.2 cmt. n.1; United States v. Newman, 614 F.3d 1232, 1233 (11th Cir. 2010) ("Because the term 'includes' is not exhaustive, the definition of 'substantial

7

interference with the administration of justice' in § 2J1.2 is not limited to the examples set out in the guidelines.") (some quotation marks omitted).  As a result, the government did not have to prove that this case was analogous to one of the three examples in the guidelines commentary; it had to prove only that  "the offense resulted in substantial interference with the administration of justice." § 2J1.2(b)(2).  And even if Juarez's deletion of the text messages did not cause the investigation into Ovidio to end prematurely or improperly, it could still amount to substantial interference.

The district court found that Juarez had deleted a text message to shield one of his family members from an investigation by law enforcement.  The court found that Juarez had lied to the investigating officer about where his phone was located and then "took advantage" of the opportunity to delete the texts.  Finally, the court found that Juarez "testified falsely" at his sentence hearing.  Based on all of those findings the court determined that Juarez had substantially interfered with the administration of justice.

We are not left with "a definite and firm conviction" that the district court erred.  See Rothenberg, 610 F.3d at 624.  We give great deference to the district court's credibility determinations, see United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002), which includes the finding that Juarez gave false

8

testimony about deleting the texts.  The substantial interference enhancement was properly applied.

## IV.

Juarez also contends that the district court erred by finding that his offense "involved the selection of any essential or especially probative record, document, or tangible object to destroy."  U.S.S.G. § 2J1.2(b)(3)(B).  The guidelines do not define "essential" or "especially probative."  See id.; see also § 2J1.2 cmt. n.1.  But we have held that "essential" means "absolutely necessary," and "especially probative" records are that "would furnish, establish, or contribute toward proof" of a fact.  United States v. Mathews, 874 F.3d 698, 705 (11th Cir. 2017) (quotation marks and alterations omitted).

The district court found that Juarez selected specific text messages to delete: text messages between himself and Ovidio, his supplier of falsified documents.  Those text messages were especially probative because they would have helped prove that Ovidio and Juarez had worked together to supply falsified documents to buyers.  See id.  The district court did not err in applying a 2-level increase under § 2J1.2(b)(3)(B).

**AFFIRMED.**

9