NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2182
_____

UNITED STATES OF AMERICA

v.

JASON MCDONALD,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cr-00057-001)
District Judge: Honorable Nitza I. Quiñones Alejandro

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
June 4, 2024

Before: HARDIMAN, PORTER, and AMBRO, *Circuit Judges*.

(Filed: November 18, 2024 )
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Jason McDonald was indicted under 18 U.S.C. § 922(g)(1) as being a felon in possession of a firearm. McDonald pleaded guilty after the District Court denied McDonald's motion to suppress the evidence discovered by police officers after stopping his car and his post-arrest confession. He now appeals the District Court's denial of his motion to suppress. For the reasons below, we will affirm.

I

Philadelphia Police Officers Brendan Kelley and Paul Narrigan were patrolling a high-crime area between the Allegheny West and Strawberry Mansion neighborhoods of Northwest Philadelphia when they noticed a car with an inoperable brake light. They signaled for the car, which McDonald was driving, to pull over. Officer Kelley then approached the driver's side of the car and Officer Narrigan approached the passenger's side.

When Officer Kelley reached the driver's side door, the driver's side window was open. Officer Kelley was "able to peek [his] head down" and "look into the car" through the open driver's side window. App. 055–056. He shined his flashlight toward the interior of the driver's side door and saw the barrel of a handgun.

After seeing the handgun, Officer Kelley grabbed McDonald's wrist through the window and Officers Kelley and Narrigan removed McDonald from the car, handcuffed him, and placed him in the back of the police car. While Officer Kelley was running McDonald's identification to check whether McDonald had a license to carry, Officer Narrigan searched the car, noticed a sweatshirt between the driver's seat and center

2

console and uncovered a rifle under the sweatshirt. After backup arrived, officers seized both firearms and ammunition found in the car's trunk.

McDonald was arrested and brought to the police station. After McDonald was arrested, he confessed to possessing the handgun and rifle.

He was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). McDonald moved to suppress the evidence of firearms and his post-arrest confession to police. The District Court denied the motion, holding that Officer Kelley's observing and then seizing the handgun in the driver's side pocket did not violate McDonald's Fourth Amendment rights, and that the post-arrest confession was therefore not the fruit of an unlawful arrest.

After the District Court denied McDonald's suppression motion, he entered a guilty plea but preserved his right to appeal the District Court's denial of his motion. This timely appeal followed.[1]

II

We review a "District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002) (citation omitted). "We may affirm the rulings of the District Court for any proper reason that appears on the record." *Id.* at 337 (citation omitted).

---

[1] The District Court had subject-matter jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction under 28 U.S.C. § 1291.

3

## III

## A

McDonald contends that the District Court erred by determining that Officer Kelley's search of the vehicle was justified under the plain view doctrine. Under the plain view doctrine, officers may seize incriminating evidence they come across if (1) they have not "violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed"; (2) "the incriminating character of the evidence [is] immediately apparent"; and (3) they "have a lawful right of access to the object itself." *United States v. Menon*, 24 F.3d 550, 559 (3d Cir. 1994) (citations and quotation marks omitted). The government bears the burden of establishing that the plain view doctrine applies. *See United States v. Bey*, 911 F.3d 139, 145 (3d Cir. 2018) ("Warrantless searches and seizures are presumptively unreasonable unless the Government satisfies its burden of establishing that one of the exceptions to the warrant requirement applies.").

As to the first condition, the District Court found—and McDonald does not dispute—that Officer Kelley was lawfully present outside the vehicle, where he evaluated the inoperable brake light in violation of the Pennsylvania Motor Code. *See United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (noting that a "police officer who observes a violation of state traffic laws may lawfully stop the car committing the violation").

The parties dispute, however, whether Officer Kelley leaned his head through the window of McDonald's car to see the handgun. McDonald argues that Officer Kelley observed the handgun after his head was inside the car and that such a "piercing" of the driver's side windowpane constitutes a search. Opening Br. at 14; *see United States v.*

*Ngumezi*, 980 F.3d 1285, 1288 (9th Cir. 2020) (holding that Supreme Court precedent "establishes that a physical intrusion into the interior of a car constitutes a search").

But contrary to McDonald's presentation of the facts, the District Court found that Officer Kelley did not lean through the window to observe the handgun. Instead, Officer Kelley "peek[ed] [his] head down," "look[ed] into the car," and shined his flashlight toward the interior of the driver's side door. App. 011–012 (internal quotation marks omitted) (second alteration in original). And although Officer Kelley testified on cross-examination at the suppression hearing that he "may have" crossed his head inside the open window, he could not recall doing so. App. 057.

Since we review the District Court's findings of fact for clear error, we ask whether we are "left with the definite and firm conviction that a mistake has been committed." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc)). But where, as here, there are "two permissible views of the evidence," the District Court's "choice between them cannot be clearly erroneous." *Id.* (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).[2]

---

[2] Judge Hardiman concurs only in the judgment. He disagrees with the notion that the District Court found, as a matter of fact, that Officer Kelley did not lean into the car. On his view, the record shows that the District Court relied on the Supreme Court's *legal* decision in *Texas v. Brown*, 460 U.S. 730, 739-40 (1983). In that case, the record was clear that the officer remained outside the vehicle. In any event, Officer Kelley had reasonable suspicion that McDonald could access a weapon because of his furtive movements, *United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997), and the high-crime location of the traffic stop. *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

Because we adopt the District Court's finding that Officer Kelley did not lean inside the vehicle, he did not violate McDonald's Fourth Amendment rights when he observed the handgun. *Texas v. Brown*, 460 U.S. 730, 740 (1983) ("There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." (citations omitted)). And while Officer Kelley shined his flashlight inside the vehicle when observing the handgun, the "use of a flashlight to aid [an] officer's vision [does] not transform the observations justified under the 'plain view doctrine' into an illegal search." *United States v. Rickus*, 737 F.2d 360, 366 n.3 (3d Cir. 1984).

The second and third conditions—that the incriminating character of the evidence be immediately apparent and there was a lawful right of access—were also met here. For the incriminating character of the evidence to be immediately apparent, there must be "probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980). Probable cause "depends on the totality of the circumstances" and "is not a high bar." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (internal quotation marks omitted). Indeed, an officer need not "know" that items are evidence of a crime, rather "the facts available to the officer [must] warrant a [person] of reasonable caution [to believe] that certain items may be contraband or stolen property or useful as evidence of a crime." *Brown*, 460 U.S. at 741–42 (citations and internal quotation marks omitted). Officer Kelley had probable cause to associate the handgun with criminal activity based on his experience and familiarity with the high-crime area where he stopped McDonald, and because carrying a handgun in a vehicle absent a valid license or

6

exception is unlawful under Pennsylvania law. 18 Pa. Cons. Stat. § 6106(a)–(b). Officer Kelley also had a lawful right of access to the handgun since "seizure of property in plain view involves no invasion of privacy and is presumptively reasonable" when probable cause exists, as was the case here. *Payton*, 445 U.S. at 587.

B

McDonald also argues that his post-arrest confession should be suppressed as the fruit of an unconstitutional search of the vehicle. The fruit of the poisonous tree doctrine provides that evidence obtained as the result of an officer's illegal search may not be used against the victim of the unlawful search. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963). But since Officer Kelley lawfully saw the handgun in plain view, McDonald's post-arrest confession was not fruit of a poisonous tree.

Additionally, McDonald argues that his post-arrest confession should be suppressed because the officers lacked probable cause to arrest him. Rule 12 of the Federal Rules of Criminal Procedure requires that a request to suppress evidence "be raised by pretrial motion." Fed. R. Crim. P. 12(b)(3)(C). "If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Fed. R. Crim. P. 12(c)(3). "And we . . . can review 'untimely' Rule 12(b)(3) arguments only if a party shows 'good cause' for us to do so." *United States v. Sok*, 115 F.4th 251, 261 (3d Cir. 2024) (quoting Fed. R. Crim. P. 12(c)(3)).

McDonald did not argue in the District Court that the officers lacked probable cause to arrest him. He nevertheless contends that we should find good cause to excuse his untimely argument. "'[G]ood cause' under Rule 12 is a flexible standard that will

7

necessarily depend on the circumstances of a particular case." *Sok*, 115 F.4th at 263. But "the failure to offer 'any colorable explanation' for an untimely Rule 12 argument plainly does not suffice to show good cause." *Id.* (quoting *United States v. Rose*, 538 F.3d 175, 184 (3d Cir. 2008)).

McDonald contends that good cause exists because the government raised the issue of probable cause at the suppression hearing, the District Court "necessarily decided" the issue, and McDonald raised other challenges at the suppression hearing. Reply Br. at 9. However, none of these arguments begin to explain why McDonald failed to previously raise the issue of probable cause.

\* \* \*

Accordingly, we will affirm the judgment of the District Court.